**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| PSEG RENEWABLE TRANSMISSION LLC,<br>*Petitioner*,<br>v.<br>THE RICHARD SMITH SNADER TESTAMENTARY TRUST, *et al.*,<br>*Respondents.* | Case No. 26-cv-793-ABA |

**MEMORANDUM OPINION**

On February 25, 2026, Petitioner PSEG Renewable Transmission LLC ("PSEG") filed the petition in this case ("PSEG 7"), and an accompanying motion for a preliminary injunction (the "PI Motion"), to permit it to obtain temporary access to the properties of Respondents to perform non-invasive field surveys pursuant to Md. Code Ann., Real Property § 12-111. ECF Nos. 1 & 3. Respondents include several individuals as well as a trust that own or reside at properties that PSEG wishes to survey (the "Non-Government Respondents") as well as The Board of County Commissioners for Carroll County, Maryland ("Carroll County" or "the County"), which holds conservation easements over properties where PSEG needs to complete surveys. ECF No. 1. The Court has previously issued preliminary injunctions in other nearly identical cases, including three that pertain to properties that are subject to the easements addressed herein. *See PSEG Renewable Transmission LLC v. Arentz Family, LP*, 788 F. Supp. 3d 705, 711–724 (D. Md. 2025) (hereinafter, "*PSEG I*"), *aff'd* -- F.4th --, 2026 WL 2263342 (4th Cir. Aug. 6, 2026); *PSEG Renewable Transmission LLC v. Alvi Properties, LLC, et al.*, Case No. 1:25-cv-02296-ABA ("PSEG 2"); *PSEG Renewable Transmission LLC v. Belfast Farms,*

*LLC, et al.*, Case No. 1:25-cv-03352-ABA ("PSEG 3"). Carroll County filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim. ECF No. 38.

This Court granted a preliminary injunction as to the Non-Government Respondents only and reserved decision on Carroll County's motion. ECF Nos. 45 & 46. With respect to the claims against the County, the Court held a hearing on May 12, 2026. ECF No. 58. For the reasons that follow, the motion for preliminary injunction (ECF No. 45) will be granted and the motion to dismiss (ECF No. 38) will be denied.

## I. BACKGROUND[1]

Thirty-three tracts of land that are subject to preliminary injunctions ("PIs") under *PSEG Renewable Transmission LLC v. Arentz Family, LP, et al.*, Case No. 1:25-cv-01235-ABA ("PSEG 1"), *PSEG 2*, or *PSEG 3* or for which the owner has consented to PSEG's surveys are covered by forty-five conservation easements held by Carroll County (some tracts of land are subject to more than one easement). ECF No. 1-8, Declaration of Dawn Shilkoski ("Shilkoski Decl."), ¶ 7 (citing ECF No. 1-9 at 2–4); ECF No. 38-8 at 5. This includes thirty-seven forest conservation easements, three non-forested water resource protection easements, two floodplain management easements, one stormwater management easement, one stream-restoration easement, and one agricultural land preservation easement. ECF No. 1-9 at 2–4; ECF No. 38-8 at 5; ECF Nos. 38-1, 38-2, 38-3, 38-6, & 38-7 (the easement agreements). The County, relying on its conservation easements, has objected to PSEG performing cultural resource surveys on those properties. ECF No. 1 ¶ 76 (citing ECF No. 1-9, Shilkoski Decl. ¶ 7). The cultural resource

[1] As much of the background of this case replicates *PSEG I*, the Court adopts its and the Fourth Circuit's prior explanation of the background. 788 F. Supp. 3d at 711–715; -- F.4th --, 2026 WL 2263342 at *1–3. Therefore, this section will only include any background information that pertains specifically to this case, *PSEG 7*.

surveys that PSEG is required to complete include shovel tests done by a hand shovel to create a hole that is approximately 1.5 feet in diameter and on average about 18 inches deep that would then be backfilled, a methodology approved by the Maryland Historical Trust. ECF No. 1-23 at 3. Many of the conservation easements, however, disallow any form of digging or removal of dirt or plant material. *See* ECF No. 38-1 ¶¶ 2–6; ECF No. 38-2 ¶ 2; ECF No. 38-3 ¶¶ 1–2; ECF No. 38-6 ¶ 2; ECF No. 38-7 at 2.

Counties in Maryland are granted authority to enter into agreements with property owners for conservation easements that can serve different purposes such as restrictions on what can be built on or removed from a property. Md. Code Ann., Real Prop., § 2-118. Conservation easements are enforceable in the same manner as other easements or servitudes with respect to the property. *Id.* § 2-118(a).

On April 11, 2025, during the Maryland Public Service Commission's ("PSC's") early review of PSEG's certificate of public convenience and necessity ("CPCN") application, Christopher Heyn, the Director of Planning & Land Management for Carroll County, wrote a letter that he was "in full agreement" with the Power Plant Research Program ("PPRP") that "the lack of critical field studies to evaluate alternatives and minimize impacts is a concerning omission from the application," and specifically noted a concern with the lack of survey studies done along the proposed route. ECF No. 1-23 at 12, 14. He then noted that approximately 128 acres of land along the route are in Carroll County and requested that the PSC require specific mitigation of impacts of the surveys based on the State and County Forest Conservation Codes. *Id.* at 13–14.

On September 11, 2025, PSEG emailed a representative from the Carroll County Resource Management Division, Jonathan Bowman, indicating that it would need to conduct surveys on land subject to the County's easements. ECF No. 1-23 at 9–11. Mr.

Bowman responded to the email on October 14, 2025, confirming that he had received PSEG's notification and requested a list of the properties at issue. *Id.* at 9. PSEG provided the list of properties on November 4, 2025, and Mr. Bowman confirmed receipt on November 7, 2025. *Id.* at 7–8.

On February 17, 2026, PSEG's counsel sent the County Attorney for Carroll County, Timothy C. Burke, Esq., a formal "Notice of Intent to Conduct Cultural Resource Surveys on Certain Properties Located in Carroll County." *Id.* at 2–6. The notice included a copy of the emails with Mr. Bowman and the list of properties. *Id.* PSEG requested that the County respond within seven days of the letter and stated that it would consider a lack of response as "an acknowledgement that PSEG has provided notice of its intent to take cultural resource surveys on the subject properties and will proceed with the cultural resource surveys accordingly in compliance with the specific notice requirements and terms of the Federal District Court's preliminary injunctions." *Id.* at 6. PSEG alleges that, as of February 24, 2026, no response had been received from the County. ECF No. 1-8, Shilkoski Decl., ¶ 40. PSEG filed a Petition in this Court on February 25, 2026. ECF No. 1.

## II. STANDARD OF REVIEW

### A. Subject Matter Jurisdiction under Rule 12(b)(1)

A motion to dismiss based on lack of subject matter jurisdiction raises questions regarding the Court's authority to adjudicate a case, and so the Court must generally first determine whether it has jurisdiction over the claims before ruling on the merits. Fed. R. Civ. P. 12(b)(1); *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–102 (1998)); *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). "[I]f the

[defendant] challenges jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of persuasion, and the court is free to consider exhibits outside the pleadings 'to resolve factual disputes concerning jurisdiction.'" *Smith v. Wash. Metro. Area Transit Auth.*, 290 F.3d 201, 205 (4th Cir. 2002) (quoting *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995)).

**B. Failure to State a Claim under Rule 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). At the pleadings stage, the Court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016) (citation omitted).

To withstand a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative relief" by containing "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court reviewing a 12(b)(6) motion must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff," *King*, 825 F.3d at 212, bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal*, 556 U.S. at 679.

### C. Motion for Preliminary Injunction

A preliminary injunction is a form of equitable relief intended to prevent irreparable harm while a lawsuit remains pending. *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014). To obtain a preliminary injunction, a plaintiff must establish that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tip in his favor; and (4) an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *League of Women Voters of N.C.*, 769 F.3d at 236; *Am. Fed'n of Tchrs. v. Bessent*, 152 F.4th 162, 168–69 (4th Cir. 2025). The third and fourth factors merge when, as here, the government is the opposing party. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III. DISCUSSION

### A. Subject Matter Jurisdiction

PSEG asserts that this Court has subject matter jurisdiction under 28 U.S.C. § 1332(a). ECF No. 1 ¶ 28. Under diversity jurisdiction, a district court has jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a), (a)(1). Generally, "the test for determining the amount in controversy in a diversity proceeding is 'the pecuniary result to either party which [a] judgment would produce.'" *Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002) (quoting *Gov't Emps. Ins. Co. v. Lally*, 327 F.2d 568, 569 (4th Cir. 1964)). "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 639 (4th Cir. 2010) (quoting *Hunt v. Wash. State Apple Advert.*

*Comm'n*, 432 U.S. 333, 347 (1977)) (internal quotations omitted). Courts "ascertain the value of an injunction for amount in controversy purposes by reference to the larger of two figures: the injunction's worth to the plaintiff or its cost to the defendant." *Id.* (citing *Dixon*, 290 F.3d at 710).

Carroll County does not, and cannot, contest that the parties satisfy complete diversity. *See* ECF No. 1 ¶¶ 7–27; ECF No. 38-8 at 8–9. The County instead argues that "there are no allegations in the Petition to support PSEG's claim that the amount in controversy exceeds $75,000." ECF No. 38-8 at 9. The County further contends that the Petition only refers to PSEG's expenses incurred to date for its CPCN application (totaling over $7 million) and expenses that would be incurred if it were required to prepare a new CPCN application but does not represent that these expenses constitute "the value of the object of the litigation." *Id.* at 9–10 (quoting *Hunt*, 432 U.S. at 347). The County argues that the object of the litigation is not the PSC granting PSEG's CPCN application, but rather an order from this Court authorizing the cultural resource surveys. *Id.* at 10. The County contends that PSEG has not satisfied the amount-in-controversy requirement because it has not specifically identified the value of its surveys on these particular properties or the value of the conservation easements themselves.

Carroll County's arguments are unavailing. PSEG has sufficiently alleged that its CPCN application is contingent upon the current proposed route for which it is required to complete surveys. If PSEG is unable to complete the required surveys on any of the properties along the current proposed route, it would need to redesign the proposed route and submit a new CPCN application, thus re-incurring expenses far in excess of the $75,000 threshold for diversity jurisdiction. *See* ECF No. 47 at 6. Therefore, Carroll County's motion to dismiss for lack of subject matter jurisdiction will be denied.

### B. Section 12-111 authorizes PSEG's surveys and studies

In *PSEG 1*, the Court granted PSEG a preliminary injunction after concluding that PSEG had established a likelihood of success that it may conduct surveys on those respondents' properties pursuant to Md. Code Ann., Real Prop. § 12-111. *PSEG I*, 788 F. Supp. 3d at 735–41, *aff'd* 2026 WL 2263342, at *13. This statute provides as follows:

> (a) Civil engineers, land surveyors, real estate appraisers, and their assistants acting on behalf of the State or of any of its instrumentalities or any body politic or corporate having the power of eminent domain after every real and bona fide effort to notify the owner or occupant in writing with respect to the proposed entry may:
>
> > (1) Enter on any private land to make surveys, run lines or levels, or obtain information relating to the acquisition or future public use of the property or for any governmental report, undertaking, or improvement;
> >
> > (2) Set stakes, markers, monuments, or other suitable landmarks or reference points where necessary; and
> >
> > (3) Enter on any private land and perform any function necessary to appraise the property.
>
> (b) If any civil engineer, surveyor, real estate appraiser, or any of their assistants is refused permission to enter or remain on any private land for the purposes set out in subsection (a) of this section, the person, the State, its instrumentality, or the body politic or corporate on whose behalf the person is acting may apply to a law court of the county where the property, or any part of it, is located for an order directing that the person be permitted to enter on and remain on the land to the extent necessary to carry out the purposes authorized by this section.

Md. Code Ann., Real Prop. § 12-111(a)–(b). Therefore, "so long as PSEG (1) qualifies as a 'body politic or corporate having the power of eminent domain' within the meaning of

the statute, and (2) makes 'every real and bona fide effort to notify the owner or occupant in writing with respect to the proposed entry,' then it is entitled to '[e]nter on any private land' to, among other things, 'make surveys, run lines or levels, or obtain information relating to the acquisition or future public use of the property or for any governmental report, undertaking, or improvement.'" *PSEG 1*, 788 F. Supp. 3d at 735 (quoting Md. Code Ann., Real Prop. § 12-111(a)). And there is no requirement that PSEG have obtained a CPCN *before* accessing property under § 12-111(a); such a requirement "would render the statutory scheme unworkable, 'illogical, unreasonable, [and] inconsistent with common sense.'" *PSEG I*, 2026 WL 2263342, at *8 (quoting *Lawrence v. State*, 475 Md. 384, 406–07 (2021)). "PSEG must be able to seek access under Section 12-111(a) before it can receive a CPCN." *Id.*

**1. Notification**

Carroll County first argues that PSEG's preliminary injunction motion should be denied because PSEG "did not make 'every real and bona fide effort to notify the owner or occupant in writing with respect to the proposed entry' onto the lands subject to easements held by Carroll County." ECF No. 37 at 28–29; *see also* ECF No. 38-8 at 30–31.

Section 12-111 requires the entity conducting surveys to make "every real and bona fide effort to notify the **owner or occupant** in writing with respect to the proposed entry" prior to entering any private property for the purpose of surveys. Md. Code Ann., Real Prop. § 12-111(a) (emphasis added). The words "owner" and "occupant" are not defined in the statute and, therefore, take their ordinary meaning—meaning one who has a possessory interest in the property whether that be an ownership interest (such as someone who holds the deed to a property) or a tenant interest (such as

someone who rents but does not own a property). Although Carroll County holds conservation easements on the various properties at issue, it is undisputed that these easements constitute nonpossessory interest in the land, and thus Carroll County does not constitute "the owner or occupant" of any of the properties at issue. *See* ECF No. 54 at 7–8; ECF No. 58, Motions Hearing Transcript 17:17–19:1. Given that it is undisputed that the actual landowners did receive proper notice, the County's argument fails. *See* ECF No. 58, Motions Hearing Transcript 17:17–21; ECF No. 1-8, Shilkoski Decl. ¶ 7 (all the landowners had consented to entry).

Even if PSEG were required to make a "real and bona fide effort to notify" Carroll County as the holder of nonpossessory conservation easements "in writing" of its intent to enter these properties, the County's argument fails because PSEG did provide written notice. Carroll County has been aware of PSEG's requirement to conduct surveys within the County since at least April 11, 2025. *See* ECF No. 1-23 at 12–14. PSEG also contacted the County directly regarding the properties at issue as early as September 11, 2025 and communicated with County officials over the course of two months. *Id.* at 7–11. PSEG then provided one final, formal notice on February 17, 2026. *Id.* at 2–6. Carroll County's contention that the February 17, 2026 letter is the only notice that PSEG provided is inaccurate as written notice to the County was provided as early as September 11, 2025 (five months before filing suit), or arguably November 4, 2025 (three months before filing suit) when PSEG sent the actual list of properties to Mr. Bowman, of the Carroll County Resource Management Division. Therefore, even if PSEG had been required to notify Carroll County, PSEG did so.

**2. Statutory authorization**

The County next argues that § 12-111 only authorizes surveys on "private land" and, although the properties here *are* privately owned, the statute does not encompass surveys on lands that are subject to conservation easements, in part because the PSC does not ultimately have authority to condemn these easements. ECF No. 37 at 7–28; ECF No. 38-8 at 11–30.

It is undisputed, and clear from the statute, that Section 12-111 authorizes surveys on "private land." *See* Md. Code Ann., Real Prop. § 12-111(a)(1), (a)(3), (b) (referring only to "any private land"); *see also* ECF No. 38-8 at 11 (Carroll County stating that Section 12-111(a) provides "a right to enter and survey on 'private land'"); ECF No. 40 at 4 (PSEG stating that Section 12-111 "applies to private lands"). It is also undisputed that each of the properties at issue in this case *is* privately owned. What renders these properties different from those in other of the *PSEG* cases pending in this Court is that these properties are subject to the County's conservation easements.

Carroll County argues that "[w]ith respect to the properties encumbered by conservation and other easements held by Carroll County, RP § 12-111(a) simply does not apply." ECF No. 38-8 at 11. The County does not contend that an easement converts private land to public land. ECF No. 58, Motions Hearing Transcript 18:14–22. Rather, its argument is that Section 12-111(a) does not authorize surveys for these properties because the conservation easements give *the County* an exclusive right to control those lands "to preserve the forest land, to preserve the forest cover, to preserve the shrubbery and to preserve the other lands here." *Id.* 18:22–19:1. *See* ECF No. 38-8 at 12 ("PSEG seeks to violate the express terms of certain easements that are held by Carroll County for the purpose of protecting forestlands, water resources, and other public interests.").

An easement is a nonpossessory interest in real property owned by another person. *Purnell v. Beard & Bone, LLC*, 203 Md. App. 495, 505 (2012) (citing *Boucher v. Boyer*, 301 Md. 679, 688 (1984); *Miller v. Kirkpatrick*, 377 Md. 335, 349 (2003)). Carroll County does not and cannot contend that its easements convert private property into public property. It also does not and cannot contend that the text of Section 12-111 includes any carveout for private property encumbered by another (whether by another private party or by a government entity). The statute clearly applies to "*any private* land." *See* Md. Code Ann., Real Prop. § 12-111(a)(1), (a)(3), (b) (emphasis added). Therefore, Carroll County's argument that § 12-111 has no application to these private lands or that the perpetual nature of the conservation easements has any bearing on this analysis is unavailing.

The County's final argument is that PSEG cannot satisfy the requirement of being a "body politic or corporate having the power of eminent domain." ECF No. 38-8 at 12. This Court and the Fourth Circuit have already addressed most aspects of that argument in *PSEG I*, 788 F. Supp. 3d. at 727–30, 735, *aff'd*, 2026 WL 2263342, at *8–9. But the County argues that even accepting that § 12-111(a) authorizes PSEG to perform surveys on private property, that reasoning does not apply to *these* properties because (1) "[t]he easements at issue here were granted for the benefit and protection of the public, are authorized by law, and are perpetual in nature," and (2) the PSC "has no power of eminent domain *to condemn easements held by other governments*, in this case the Carroll County government." ECF No. 38-8 at 13–19 (emphasis added). It specifically contends that Maryland's condemnation statute, Md. Code Ann., Real Prop. § 12-101, *et seq.*, is limited to the "acquisition of *private* property for public use" and that "[t]he easements at issue here are unquestionably not 'private property' under any conceivable

definition." *Id*. at 14 (quoting Md. Code Ann., Real Prop. § 12-101(a), emphasis added). It argues, therefore, that "no provision in Maryland law authorizes the PSC or a holder of a CPCN to condemn easements held by local governments," and that "[e]ven if such authority existed, it likely would be subject to the 'prior public use' doctrine." *Id*. at 14–15.

These arguments fail for two reasons.

PSEG's authority to perform these surveys is authorized by § 12-111 and thus was conferred by the Maryland legislature, not the PSC. The focus is not on whether the PSC has authority to condemn county easements but whether the State has that authority. The answer is yes. "[T]he State of Maryland has inherent powers of condemnation." *A&E N., LLC v. Mayor & City Council of Balt.*, 431 Md. 253, 260 (2013) (cleaned up). While "the power to condemn is not absolute," the State may "take private property for 'public use'" so long as there is a necessity and just compensation. *Id*. (quoting *J.L. Matthews, Inc. v. Md.-Nat'l Cap. Park & Plan. Comm'n*, 368 Md. 71, 87 (2002); citing *Green v. High Ridge Ass'n*, 346 Md. 65, 72 (1997)). As stated above, a conservation easement does not convert private property into public property or anything other than private property. The Maryland legislature, through Md. Code Ann., Pub. Utils. § 7-207, authorizes the PSC to condemn private property and expressly incorporated Title 12 of the Real Property Article; that conferred upon the PSC the authority to authorize PSEG to, at minimum, conduct these surveys. *See* Md. Code Ann., Pub. Utils. § 7-207(a)(3)(v)(2).

To the extent that the County's easements constitute something other than private property, the "prior public use" doctrine supports PSEG's powers of eminent domain over the relevant properties. Under the "prior public use" doctrine, "when land

has once become lawfully appropriated to a public use, it cannot be thereafter condemned for an inconsistent user, unless authority for such later appropriation has been conferred expressly or by necessary implication." *N. Cent. Ry. Co. v. City of Balt.*, 133 Md. 658, 660 (1919) (citations omitted). Necessary implication exists where "it can be clearly inferred from the nature and situation of the proposed work, and from the impracticability of constructing it without encroaching on land already used by the public, that the legislature intended to authorize the property to be taken." 1A Nichols on Eminent Domain, Ch. 2 § 2.17 (3d ed., 2026). "[T]his rule is ordinarily applied in grants of power to public service corporations." *United States v. S. Power Co.*, 31 F.2d 852, 856 (4th Cir. 1929). The power to exercise eminent domain over county-held easements is necessarily implied by Md. Code Ann., Pub. Utils. § 7-207 and Md. Code Ann., Real Prop. § 12-111. Section 7-207 grants PSC the authority to grant CPCN applications and determine the applicable route or location, *see id.* § 7-207(e)(1), and renders companies like PSEG eligible to apply for a CPCN, *see id.* § 7-207(b). Therefore, the prior public use doctrine does not permit the County to preclude PSEG from conducting the surveys that the PPRP has directed PSEG to perform.

* * *

Therefore, PSEG has shown a likelihood of success of establishing that it is authorized to conduct the cultural resource surveys on the private properties encumbered by Carroll County's conservation easements.

### C. Irreparable Harm, Balance of Equities, and Public Interest

Much of PSEG's basis for irreparable harm, balance of the equities, and public interest replicate the arguments from *PSEG 1*, ECF No. 3-6 at 32–41, and Carroll County adopted the arguments by Non-Government Respondents who reasserted their

arguments from *PSEG 3*, ECF No. 37 at 29 (citing ECF No. 14-2 at 16–37). Therefore, the Court will adopt its and the Fourth Circuit's prior analysis on that issue. *PSEG I*, 788 F. Supp. 3d at 737–40, *aff'd*, 2026 WL 2263342 at *10–13.

### D. Bond

For the reasons explained in *PSEG Renewable Transmission LLC v. Arentz Family, LP*, Case No. 25-cv-1235-ABA, 2025 WL 1919947, at *3 (D. Md. July 11, 2025), the Court will require PSEG to pay bond to cover any "costs and damages sustained by any party found to have been wrongfully enjoined or restrained," *see* Fed. R. Civ. P. 65(c). Unlike with the prior *PSEG* cases, the question here is limited to whether bond is necessary to cover potential costs or damages to the County from PSEG conducting the surveys here on properties that are subject to conservation easements. The Court finds that insofar as any bond is appropriate, a bond of $100 per property will be imposed. *See PSEG Renewable Transmission LLC*, 2025 WL 1919947, at *3. As there are thirty-three properties at issue, bond will be set at $3,300.

## IV. CONCLUSION

For the aforementioned reasons, Petitioner's motion for preliminary injunction will be granted and Respondent Carroll County's motion to dismiss will be denied. A separate order and Preliminary Injunction follow.

Date: August 20, 2026

*/s/*
Adam B. Abelson
United States District Judge